**STODDARD v. COMMISSIONER OF INTERNAL REVENUE.**

**KIRKLAND v. SAME.**

**HORN v. SAME.**

Nos. 49-51.

Circuit Court of Appeals, Second Circuit.

March 1, 1944.

Barnet D. Golden, of New York City (Geo. E. H. Goodner and Scott P. Crampton, both of Washington, D.C., of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

As the principal issues are common to all three of these petitions, they were consolidated for hearing and one opinion will suffice. All the petitioners kept their books and filed their returns in the same way—on the cash receipts and disbursements basis.

Those principal issues are (a) whether the owner of an undivided interest in a second mortgage note of a corporation, which was reorganized pursuant to a plan in proceedings under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, who exchanged such interest for second mortgage bonds of a new corporation which acquired all the assets of the old in the reorganization, may deduct such interest as a bad debt either on the basis of a charge-off for worthlessness made after the exchange, or because the new bonds were entered on his books as of no value when received; and (b) whether, if no bad debt deduction may be taken, the exchange of the old interest in accordance with the plan of reorganization resulted in a loss which is deductible. The commissioner and the tax court denied the deductions claimed.

An additional issue, raised only in the petition of Louis E. Stoddard, Jr., relates to a deduction taken in his return for amounts paid to accountants in the taxable year for services in a successful controversy which the taxpayer had with the commissioner over the amount of his income taxes in previous years. He took the deduction under § 23(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a), as a business expense, but the commissioner disallowed it and was upheld by the tax court.

Louis E. Stoddard, Sr., the father of all three petitioners, was heavily interested financially in the Taft Realty Company, which owned a hotel, an apartment building and a theatre in New Haven, Conn. This corporation had been losing money for some time and had been unable to pay the interest on its securities. An action for the foreclosure of a first mortgage on its real estate was pending in the state court when Mr. Stoddard, who was also the guarantor on its $350,000 note secured by a second mortgage on its real estate, induced it to file a voluntary petition for reorganization under § 77B of the Bankruptcy Act. These proceedings resulted in the promulgation of a plan for reorganization which was approved and consummated in 1936. At that time each of the petitioners held an undivided interest in a second mortgage note of the Taft Realty Company having a basis for tax purposes of $43,333.34. In the reorganization which was carried out according to the plan, a new corporation, called the Taft Realty Corporation, was organized which took over all the property of the Taft Realty Company. These assets consisted of land and buildings carried on the old books at $2,158,505.13, which were appraised for taxation at $1,712,730, and of furnishings and equipment carried on those books at

$313,721.59. The new corporation set up all these assets on its books at an appraised value of $1,619,000. The old company also had outstanding first mortgage bonds of the face value of $1,400,000 plus accrued interest, and the holders of these bonds received for each $100 of their face value $100.00 in first mortgage bonds of the new corporation payable September 1, 1951, with interest reduced to three per cent and payable from March 1, 1938, plus a voting trust certificate for one share of the new corporation's common stock. The shares so represented by voting trust certificates taken by the first mortgage bondholders amounted to 11,759, which equalled five-twelfths of all the stock of the new corporation.

A bank to which the old company owed an unsecured debt of $19,000 received second mortgage bonds of the new corporation of face value of $5000, in exchange for that debt, and owners of undivided interests in the old second mortgage note received their proportionate share of the remainder of the second mortgage bonds of the new corporation. This was an issue of $155,-000 in face value bearing interest at four per cent and maturing on September 1, 1956.

The remaining seven-twelfths of the common stock of the new corporation, 16,-463 shares, were sold for $150,000 in cash which Mr. Stoddard, Sr., had, pursuant to the terms of the plan, undertaken to raise for that purpose in return for his release from all liability on his guarantee. As he was unable to provide the money for this purchase, the petitioners furnished part of it as follows: Louis E. Stoddard, Jr., and Mrs. Kirkland each put in $42,500 and Mrs. Horn, $25,000. The remainder, $40,000, was provided by a friend of Mr. Stoddard, Sr. All the common shares of the new corporation were issued to trustees to hold under a voting trust agreement that was to continue in effect for fifteen years from the date the stock was issued or until all the first mortgage bonds were either paid or called for redemption with provision for their payment. None of the old stockholders received anything.

After the interest of each of the petitioners in the old second mortgage had been exchanged for the second mortgage bonds in the new corporation, that interest was charged off during 1936 on the books of each taxpayer as worthless and the new bonds were entered on those books at a value of zero.

It was essential in making a charge-off of a debt for worthlessness not only that the obligation be duly ascertained to be worthless, but also that the charge-off be the result of an ascertainment of worthlessness made while the taxpayer is still the obligee. Levy v. Commissioner, 2 Cir., 131 F.2d 544. Even if we assume arguendo that the facts would have justified a charge-off of the interest in the old second mortgage note in 1936 before the plan for reorganization was carried out, it was too late to charge it off after the owner had finally disposed of that interest by exchanging it for the second mortgage bonds of the new corporation. Reed v. Commissioner, 4 Cir., 129 F.2d 908. Nor did the entry on the books of the proceeds of the exchange, i.e., of the new second mortgage bonds, alter the situation. It is plain that there was no intent to charge off anything but the debt represented by the old second mortgage interest. That the new bonds were put on the books with a cost basis of zero shows, of course, that the taxpayers not only thought them valueless when received but considered that they were not entitled to give them the cost basis of what was exchanged for them. It shows that they did not intend to make any charge-off of the new bonds as such. That being so plain, it is impossible to give their entry upon the books any significance other than that it was consistent with the attempted charge-off of the old interest which was futile for the reasons already given. Assuming that the taxpayers might have thought the exchange a tax-free one and that they could take the new bonds at the cost basis of the old interest and so carry them on their books subject to a later charge-off should circumstances warrant that, it is clear that they did not.

The taxpayers may nevertheless have sustained a deductible loss on the exchange. That depends in the first instance upon whether the exhange was made in the course of a taxable reorganization instead of in one that was tax-free under § 112 (b) (3) and (g) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 855, 858, 859, as the tax court held, and secondly upon whether any loss in fact was shown. The latter depends upon two factors—the cost basis of the property and the fair market value of the new bonds

received. The commissioner contends that only the basis was proved.

The commissioner insists that no gain or loss on the exchange can be recognized under § 112(b) (3) of the 1936 Act because this reorganization falls within that one of the definitions of a tax-free reorganization in § 112(g) (1) of that Act, as amended by § 213(g) (1) of the 1939 Act which reads: "The term 'reorganization' means * * * (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded. * * * "

██ In taking this position the commissioner has failed to give due effect to the fact that at least in respect to the debt owed the bank the acquiring corporation did more than assume a liability of the old corporation. The debt of the old corporation was unsecured and an assumption of that part of it which survived the reorganization would have been the assumption pro tanto of the same liability. That was an unsecured liability on a promissory note. Instead of assuming that kind of liability however, the acquiring corporation became liable on bonds secured by a second mortgage on its property. The result was not merely an assumption "by the acquiring corporation of a liability of the other" but the giving of security for the payment of a part of what was previously only an unsecured debt. Consequently, the exchange cannot be treated as one "solely" for the voting stock of the acquiring corporation. Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 198, 199, 62 S.Ct. 546, 86 L.Ed. 789; Helvering v. Cement Investors Inc., 316 U.S. 527, 530, 62 S.Ct. 1125, 86 L.Ed. 1649.

It does not follow, however, that because the exchange was not tax free the entire loss may be deducted as the petitioners contend. The interest in the old second mortgage note was a capital asset and the deductible loss is limited by § 117(d) of the 1936 Act, 26 U.S.C.A. Int.Rev.Acts, page 875. Under subdivision (f) of that section the amount received in retirement of a note is to be considered as received in exchange therefor. And this note was re-

tired within the meaning of above subdivision (f). McClain v. Commissioner, 311 U.S. 527, 61 S.Ct. 373, 85 L.Ed. 319. Each taxpayer was entitled to deduct a capital loss on the exchange provided a loss was proved. We think it was since there is no serious contention that the new bonds when received had a fair market value equal to the basis of the interest in the old second mortgage note. The admitted facts lead surely to a contrary conclusion. We cannot attempt to determine the amount of the loss but, since there was some, will remand to the tax court for the determination of the amount of it.

The remaining issue, pertaining only to the petition of Louis E. Stoddard, Jr., relates to the disallowance of $522.63 which he paid to accountants in 1936 for services in helping him successfully contest the payment of taxes assessed against him by the commissioner in previous years. The deduction was claimed either under § 23 (a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1), as an expense paid during the taxable year in carrying on a trade or business, or under subdivision (a) (2) of the same section, added to the Code in 1942 and made retroactive, as a necessary non-business expense paid in the acquisition of income.

The petitioner and his two sisters already mentioned had inherited a large amount of property consisting in part at least of undivided interests in several estates. They had an office in which three persons were employed in connection with the management of their property and keeping their records. Before the petitioner became of age his father, acting as his guardian, had managed his interest in the property; and the tax court, then the United States Board of Tax Appeals, had held that the father when so doing in the years 1932 and 1933 was engaged in business.

██ That the deduction was properly disallowed as not being within § 23(a) (1) of the Internal Revenue Code, provided the former decision is not res adjudicata on the question of doing business, follows from Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. Nor can the deduction be allowed under § 23(a) (2). A contest over the correct amount of the petitioner's income taxes in previous years was not an ordinary and necessary expense paid "for the production or collection of in-

come, or for the management, conservation, or maintenance of property held for the production of income." To extend this language to make it possible for taxpayers to deduct not only expenses which resulted, or were intended to result, in the acquisition of taxable income but also the expense of litigation over the amount of their income taxes would be too great a stretch in the absence of anything to indicate that Congress intended so to encourage such litigation.

The point as to res adjudicata falls when considered in the light of the statutory scheme of income taxation. Each taxable year is a separate taxable period; different taxes are involved, and the events of each period are given their significance in tax matters in the light of what actually took place in that taxable year. Whether one is doing business or not within § 23 is often a most difficult question to decide and often depends upon the aggregate of many considerations, in themselves perhaps of minor consequence but decisive when taken as a whole. A taxpayer must of necessity prove his actual status in the period in which he seeks an advantage that being in business would give him. It is not a subject which when settled as to one period remains immutable as to another. The issue is new in each taxable year raised and remains open until pertinent facts appear with sufficient certainty to provide the basis for decision under the applicable statute for the year in question. Compare, Engineer's Club of Philadelphia v. United States, Ct.Cl., 42 F.Supp. 182; Campana Corporation v. Harrison, 7 Cir., 135 F.2d 334.

Reversed and remanded for further proceedings in accordance with this opinion.