## UNITED STATES v. SANTA INEZ CO.
### No. 10499.

Circuit Court of Appeals, Ninth Circuit.

Nov. 29, 1944.

Rehearing Denied Jan. 2, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, Irving I. Axelrad and Bernard Chertcoff, Sp. Assts. to Atty. Gen., Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Willard L. Ellis, of San Francisco, Cal., for appellee.

Before WILBUR and MATHEWS, Circuit Judges, and McCORMICK, District Judge.

MATHEWS, Circuit Judge.

On April 15, 1933, Whitney Estate Company, a corporation, hereafter called Whitney, had outstanding $1,175,000 of bonds secured by a first mortgage on real property owned by Whitney. The mortgage was in favor of American Trust Company, as trustee. Some of the bonds matured on April 15, 1933. On that date Whitney defaulted in the payment of the principal amount of those bonds and in the payment of interest on all the bonds. The default was never cured. On April 15, 1933, and at all pertinent times thereafter, the value of the mortgaged property was substantially less than the principal amount of the outstanding bonds.

On or about June 1, 1933, a committee was formed[1] for the purpose of safeguarding the interests of the bondholders. Thereafter, pursuant to a deposit agreement, $1,115,000 of the bonds were deposited with the committee by the holders thereof, and certificates of deposit representing such bonds were issued by the committee to such bondholders. One such bondholder was appellee, Santa Inez Company, a corporation, which owned $136,000 of the deposited bonds, having purchased them for $59,421.25.

In January, 1934, the committee formulated a plan whereby the mortgaged property, hereafter called the Whitney property, would be sold at public auction by the trustee, would be purchased by the committee for the benefit of the depositing bondholders, including appellee, and would be transferred by the committee to a new corporation in exchange for its stock.

The plan was carried out. The Whitney property was sold at public auction by the trustee and was purchased by the committee for the benefit of the depositing bondholders on February 28, 1934. The purchase price was $650,000, which the committee paid by applying thereto that part of the purchase price which, if paid in cash, would have been distributable to the depositing bondholders, and by paying the balance of the purchase price in cash.[2] The purchase price being insufficient to pay the bonds in full, they were not surrendered, but remained and, so far as the record shows, are still outstanding. The purchase having been made for the benefit of the depositing bondholders, each such bondholder thereby acquired, in part payment of his deposited bonds, an interest in the Whitney property, such interest being in proportion to the principal amount of bonds deposited. Thus, on February 28, 1934, appellee acquired, in part payment of its $136,000 of deposited bonds, a $136,000/1115 interest in the Whitney property.

A new corporation—One Thirty Three Geary Corporation, hereafter called Geary—was formed on September 4, 1934. On November 30, 1934, the Whitney property was transferred to Geary by the committee and, in exchange therefor, 11,150 shares of stock were issued by Geary to the committee for the benefit of the depositing bondholders. The shares were thereupon distributed to the depositing bondholders, actual owners thereof, such distribution being in proportion to their respective interests in the Whitney property. Thus, on November 30, 1934, appellee acquired, in exchange for its $136,000/1115 interest in the Whitney property, 1,360 shares of Geary stock.[3]

Appellee's original income and excess-profits tax return for 1934, filed March 13, 1935, showed no gain or loss resulting from the transaction of February 28, 1934, wherein appellee acquired, in part payment of its $136,000 of deposited bonds, a $136,000/1115 interest in the Whitney property, or from

---

[1] The committee consisted of Lloyd D. Hanford (nee Hirschfeld), Gerald D. Kennedy, Philip Paschel, R. M. Underhill and F. W. Wentworth.

[2] To enable it to make the cash payment and meet other expenses, the committee borrowed $47,000, the repayment of which was secured by a new mortgage on the Whitney property.

[3] Appellee received a certificate for these shares on December 10, 1934.

the transaction of November 30, 1934, wherein appellee acquired, in exchange for its $^{136}/_{1115}$ interest in the Whitney property, 1,360 shares of Geary stock. An amended income and excess-profits tax return for 1934 was filed by appellee on December 31, 1935. The amended return showed no gain or loss resulting from the transaction of November 30, 1934, but showed a gain of $44,907.70 resulting from the transaction of February 28, 1934.[4]

Income and excess-profits taxes in respect of the gain of $44,907.70 shown by the amended return were assessed to and paid by appellee. Payment was made to John V. Lewis, the then Collector of Internal Revenue for the First Collection District of California. Thereafter, its claim for refund having been denied, appellee brought an action to recover said taxes as having been illegally assessed and collected. Collector Lewis having gone out of office, the action was brought against appellant, the United States.[5] Appellant answered, jury trial was waived, the case was tried by the court, findings of fact and conclusions of law were stated, and judgment was entered in favor of appellee. From that judgment this appeal is prosecuted.

The question is whether the gain here involved—the gain in respect of which the taxes involved were assessed and collected —was taxable gain. Appellant contends that it was. Appellee contends that it was not. Appellee's contention is based on paragraph (5) of subsection (b) of § 112 of the Revenue Act of 1934, 26 U.S.C.A.Int. Rev.Acts, page 692, reading as follows:

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

Paragraph (5) is inapplicable here for the gain here involved did not result from a transfer of property to a corporation in exchange for stock or securities in such corporation, but resulted from the transaction of February 28, 1934, mentioned above. In that transaction, appellee acquired, in part payment of its 136,000 of deposited bonds, a $^{136}/_{1115}$ interest in the Whitney property—an interest the fair market value of which exceeded by $44,-907.70 the cost of the bonds.[6] The excess was taxable gain.[7]

In the transaction of November 30, 1934, mentioned above, there was, as appellee points out, a transfer of the Whitney property to Geary solely in exchange for stock in Geary. That, however, is immaterial here, for the gain here involved did not result from that transaction, but, as said before, resulted from the transaction of February 28, 1934. Although, as appellee points out, the transaction of February 28, 1934, and the transaction of November 30, 1934, were in pursuance of a plan formulated in January, 1934,[8] they were, nevertheless, two distinct transactions. It is not permissible to treat them as one, or to treat the gain resulting from the earlier transaction as if it had resulted from the later transaction.

Appellee cites Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775; Helvering v. Cement Investors, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649; and Leckie v. Commissioner, 37 B.T.A. 252. In the Asphaltic Limestone case, no question of gain or loss was involved. The Cement Investors case and the Leckie case each involved a gain resulting from a transfer of property

---

[4] The amended return showed that appellee's $136,000 of deposited bonds had cost appellee $59,421.25; that the fair market value of the Whitney property at the time of its purchase by the committee was $855,344; that the fair market value of the 136/1115 interest acquired by appellee was $104,328.95 (136/1115 of $855,344); and that, in acquiring said interest, appellee, therefore, realized a gain of $44,907.70 ($104,328.-95 less $59,421.25).

[5] See Jud.Code, § 24(20), 28 U.S.C.A. § 41(20).

[6] See footnote 4.

[7] Commissioner of Internal Revenue v. West Production Co., 5 Cir., 121 F.2d 9.

[8] This was not a plan of reorganization. Whitney was not reorganized or dissolved, nor was it merged or consolidated with Geary. Instead, it retained its corporate identity and continued in business long after the transactions mentioned above.

to a corporation solely in exchange for stock or securities in such corporation. No such gain being involved here, appellee's cases are not in point.

Judgment reversed.