**BARD–PARKER COMPANY, Inc.,**
**Petitioner,**

v.

**COMMISSIONER OF INTERNAL**
**REVENUE, Respondent.**
**No. 4, Docket 22784.**

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1954.

Decided Dec. 6, 1954.

Writ of Certiorari Denied
April 11, 1955.

See 75 S.Ct. 582.

---

4. Cf. Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301; Austin Road Co. v. Pope, 147 Tex. 430, 216 S. W.2d 563.

Stanley Worth, Washington, D. C.
(Blair, Korner, Doyle & Appel, Washington, D. C., of counsel), for petitioner.

H. Brian Holland, Ellis N. Slack and Harry Baum, Washington, D. C. (Meyer

Rothwacks, Washington, D. C., of counsel), for respondent.

Before CLARK, Chief Judge, and FRANK and HARLAN, Circuit Judges.

FRANK, Circuit Judge.

The pertinent statutory provisions are set forth in the footnote.[1]

I. 26 U.S.C., 1946 ed. § 113: "Adjusted basis for determining gain or loss—

"(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that * * *

"(6) *Tax-free exchanges generally.* If the property was acquired, after February 28, 1913, upon an exchange described in section 112(b) to (e), inclusive, or section 112(*l*), the basis (except as provided in paragraphs (15), (17), or (18) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. * * *

"(7) *Transfers to corporation.* If the property was acquired—

"(A) after December 31, 1917, and in a taxable year beginning before January 1, 1936, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, or

"(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

"(8) *Property acquired by issuance of stock or as paid-in surplus.* If the property was acquired after December 31, 1920, by a corporation—

"(A) by the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

"(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *"

"Sec. 718 (as added by Section 201 of the Second Revenue Act of 1940, c. 757, 54 Stat. 974, 26 U.S.C.A.Int.Rev.Acts, page 30). Equity Invested Capital.

"(a) *Definition.*—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) * * *

"(2) *Property paid-in.*—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *"

Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A.Int.Rev.Acts, page 377:

"Sec. 112. Recognition Of Gain Or Loss.

"(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) *Exchanges solely in kind.* * * *

"(4) *Same—Gain of corporation.*—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) *Transfer to corporation controlled by transferor.*—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *

The facts are stated in the opinion and findings of the Tax Court, reported in 18 T.C. 1255. In part they read as follows:

"The stockholders of the old corporation, at a special meeting, expressed their desire to dissolve the old corporation and to sell the assets and distribute the proceeds. They passed resolutions on March 12, 1930, consenting to the formation of a new company of the same name and the dissolution of the old company, 15 days thereafter, as provided by Section 22 of the Stock Corporation Law of New York [McK.Consol.Laws, c. 59]. It was also resolved to have the directors sell the assets, good will and corporate name of the old company to the new corporation. Preferred stock of the new corporation was to be received for the value of the physical assets and net worth, and common stock of the new corporation aggregating a par value of $750,000 was to be taken in payment for all other property including good will and the right to use the corporate name. The new corporation, Bard-Parker Company, Inc. (hereinafter referred to as the petitioner), was incorporated in New York on April 8, 1930. The old company was automatically dissolved on April 24, 1930. The authorized capital stock of the new corporation was $1,950,000, consisting of 4,500 shares of $100 par value 7 per cent cumulative preferred and 150,000 shares of $10 par value common stock. The petitioner, through its directors, purchased the tangible assets of the old company from the liquidating directors of that corporation on April 28, 1930, for $209,300 par value preferred stock and the assumption of liabilities of $18,855.59. The intangible assets of the old company were purchased for $750,000 par value common stock of the petitioner. The memorandum of agreement states that the old company had been dissolved.

"The liquidating directors of the old company listed the shareholders of that corporation and the number of preferred and common shares to be issued to each in payment of the tangible and intangible assets of the old company. The preferred shareholders of the old company received $50,000 par value in preferred shares of the petitioner. The remaining $159,300 of the purchase price of the tangible assets was paid to the common stockholders of the old company in the ratio in which they owned stock of their corporation * * *. The common stock of the new corporation was issued in the same ratio * * *.

"On the same date the directors of the petitioners authorized the purchase of certain patents and ap-

"(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

"(j) *Definition of control.*—As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

plications, accepting an offer made by Harry B. Arden. These patents and applications purchased by the petitioner for $750,000 through Arden were owned by Morgan Parker * * *.

"Gain or loss was not reported by petitioner or Morgan Parker from the transactions involving the purchase by petitioner of the old company's assets and Morgan Parker's patents.

"J. W. B. Ladd received $50,000 par value in common stock of the petitioner for his services * * *."

In its excess profits tax returns for the taxable years taxpayer included in its equity invested capital, for the purpose of computing its excess profits tax credit, the full par value of its common stock in the amount of $1,550,000. The Commissioner in his notice of deficiency reduced the invested capital by that amount. The Tax Court sustained the Commissioner's determination in part. With respect to the $50,000 of stock issued for Ladd's services, the Tax Court held that no amount was includible in equity invested capital. With respect to the $750,000 of stock issued for the old corporation's intangible assets, it held that the amount includible was the cost to the old corporation. With respect to the $750,000 of stock issued for Parker's scissors patents, it held that the amount includible was cost to taxpayer, i. e., the fair market value of the patents at the time they were acquired, which it found to be $300,000.

Taxpayer appeals from so much of the Tax Court's decision as is adverse to it. The Commissioner has not cross-appealed.

■ 1. The first question has to do with the intangible assets of the old company, acquired in 1930 in exchange for $750,000 par value of the new company's common stock. The Tax Court held that this was a tax-free acquisition "in connection with a reorganization" under Section 112(b) (4) of the 1928 Act; that therefore the "basis" of those assets, under 26 U.S.C. 1946 ed. Section 113(a) (7), is the same as it would be in the hands of the old company; and that consequently this "basis" represents the new company's "equity invested capital", relative to those intangible assets, pursuant to 26 U.S.C. 1946 ed. Section 718(a) (2).

Taxpayer contends that the transfer of these assets was not tax-free under Section 112(b) (4) or Section 112(b) (5) of the 1928 Act; that therefore the "basis" of those assets is their market value in 1930 when the new company acquired them in exchange for some of its common stock; and that, accordingly, that value must be used in computing the new company's "equity invested capital" under Section 718(a) (2). In support of this contention, taxpayer advances several arguments:

(A) Section 112(b) (4), by its terms, relates solely to a "reorganization" in which a "corporation" exchanges property for securities in another "corporation." But here, says taxpayer, the parties to the exchange of these assets were (1) some "natural persons," as transferors and (2) the new corporation as transferee; for, in accordance with the New York statute, the old company was dissolved, title to its assets then vested in its former directors as "liquidating trustees," and those persons transferred the assets of the dissolved old company to the new company.

We cannot agree. We think the Tax Court correctly held that the liquidating directors served merely as a "conduit" through which title passed to the new corporation. The obvious aim of Section 112(b) (4) may not so easily be balked. In Helvering v. Alabama Asphaltic Limestone Company, 315 U.S. 179, 184–185, 62 S.Ct. 540, 544, 86 L.Ed. 775, the Court said that "the separate steps were integrated parts of a single scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. * * * Here they were no more than intermedi-

ate procedural devices utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan." [2] See also Survaunt v. Commissioner, 8 Cir., 162 F.2d 753; Cf. Gregory v. Helvering, 2 Cir., 69 F.2d 809, affirmed 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Kocin v. United States, 2 Cir., 187 F.2d 707.

We conclude, then, that, in applying Section 112(b) (4), this transaction may not be treated as two transfers—one from the old company to its directors and a second from those directors to the new company—since those two transfers were but procedural steps used to complete what, in substance, constituted a single transfer.[3]

■ (B) Taxpayer also argues, as follows: Here there were two concurrent transfers in exchange for the stock of a corporation, i. e. the transfer from the old company and the transfer of the patents; in such circumstances, says the taxpayer, "the transaction must meet the tests of Section 112(b) (5) to be non-taxable," and, if it does not, then Section 112(b) (4) must be disregarded, because those subsections are mutually exclusive; and here (so the Tax Court found) Section 112(b) (5) did not fit the transaction, since the interests of the transferors in the stock of the new company was disproportionate to their interests in "the property prior to the exchange."

We think that contention untenable. Section 112(b) (4) and (5) are cumulative, not mutually exclusive. See Helvering v. Cement Investors, 316 U.S. 527, 533–534, 62 S.Ct. 1125, 86 L.Ed. 1649; Britt v. Commissioner, 4 Cir., 114 F.2d 10; Barker v. United States, 9 Cir., 200 F.2d 223, 229; Nelson v. United States, 69 F.Supp. 336, 107 Ct.Cl. 477.

■ Taxpayer cites cases in which, according to taxpayer, the courts, having held that a transaction was not tax-free because it did not meet the tests of Section 112(b) (5), did not go on to consider whether the transaction was tax-free under Section 112(b) (4) or some other "reorganization" subsection. Assuming that taxpayer has correctly described those cases, they cannot be considered as precedents here. See Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411: "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." [4]

■ (C) A further argument advanced by taxpayer runs thus: The Tax Court found that "the principal reason for the entire transaction was the exploitation of the scissors patents" acquired from natural persons by the new company; therefore, the transfer to the new company of its intangible assets, and the simultaneous transfer of the patents, both in exchange for common stock of the new company, must be regarded as one transaction; so regarded, it cannot come within Section 112(b) (4), which deals exclusively with intercorporate transactions.

We do not agree. There were two separate transfers which did not become transmuted into component steps of a single transfer merely because separate properties were transferred at the same

---

2. We think that, as the facts were significantly different, Helvering v. Cement Investors, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649, did not over-rule Helvering v. Alabama Asphaltic Limestone Company, 315 U.S. 179, 62 S.Ct. 540, 86 L. Ed. 775.

3. If United States v. Arcade Co., 6 Cir., 203 F.2d 230, can be said to hold to the contrary, we refuse to follow it.

4. Cf. Helvering v. Cement Investors, 316 U.S. 527, 530 note 1, 62 S.Ct. 1125, 1127, 86 L.Ed. 1649, where the Court said: "In Helvering v. Southwest Consolidated Corporation [315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789], no question as to the applicability of § 112(b) (5) was involved. The only question raised or considered by * * * this Court was whether or not the transaction in question qualified as a 'reorganization' under § 112(g) (1) of the 1934 Act".

time to one transferee. These two transfers were not—as in the case of the transfer by the old company to its liquidating directors and the re-transfer by them to the new company—mere "procedural" steps towards the completion of one transaction. Nor were the two transfers, otherwise distinct, fused into one merely because the interested persons would not have entered into the arrangement unless it involved both transfers contemporaneously. None of the cases cited by the taxpayer leads us to the result that these transactions should escape the tax consequences which would have followed had they been separated in time.

We do not hold that the dominant aim of the interested persons may never be controlling in this area of "tax law." We do hold that, on the facts of this case, there occurred (1) a tax-free reorganization exchange of the old company's intangible assets for new company stock plus (2) a separate non-reorganization exchange of the patents for such stock. Therefore, the "basis" of the intangible assets is that of the old company.[5]

■ 2. We think the Tax Court correctly excluded, from taxpayer's "equity invested capital," the market value of the shares of common stock issued to Ladd in exchange for services. For Section 718(a) (2) of 26 U.S.C., 1946 ed. is explicitly restricted to "property * * * previously paid in"; and services have been held not to constitute "property" for such purposes. La Belle Iron Works v. United States, 256 U.S. 377, 389, 41 S.Ct. 528, 65 L.Ed. 998; Simmons Company v. Commissioner, 1 Cir., 33 F.2d 75. Taxpayer argues that Section 69 of the New York Stock Corporation Law provides for the issuance of stock for "labor done" as well as for

money or property actually received. We think such a state statute irrelevant in interpreting the provisions of the Federal Revenue Act here applicable.

Affirmed.

5. We need not and do not consider whether (a) the interests in the new company were disproportionate for purposes of Section 112(b) (5), or (b) whether the "basis" of the transferred patents is their cost as of the date of transfer in 1930.

Nor have we considered the Commissioner's contention that taxpayer is estopped from now asserting that the exchange in 1930 was not tax-free because taxpayer and its predecessor treated the transaction as a tax-free reorganization in the 1930 tax return.