T.C. Memo. 1997-381


UNITED STATES TAX COURT


WILLIAM G. AND VIVIAN LOOMIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8748-95.                    Filed August 20, 1997.


<u>Gary C. Randall</u> and <u>James J. Workland</u>, for petitioners.

<u>John M. Altman</u> and <u>David A. Winsten</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  Respondent determined a deficiency in peti-
tioners' Federal income tax for the taxable year 1991 in the
amount of $35,528.  After concessions, the sole issue for
decision is whether petitioners must include the fair market
value of grain contracts in their alternative minimum taxable
income (AMTI) for 1991.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Lind, Washington, at the time of the filing of their petition. Petitioners timely filed their joint 1991 Federal income tax return with the Internal Revenue Service Center at Ogden, Utah. Petitioners reported their income using the cash method of accounting.

During 1991, petitioners engaged in the business of farming. Specifically, they grew and sold grain. They have been in the business of farming for over 25 years. In October and November 1991, petitioners entered into deferred payment contracts (the contracts) with the Union Elevator Warehouse Co. (Union Elevator). Pursuant to the contracts, title to the grain passed to Union Elevator at the time of sale. However, petitioners contracted for payment to occur the following year. One of the contracts with Union Elevator, which is representative of all the contracts at issue, provides:

> The Seller agrees to sell and Buyer agrees to buy from
> Seller the following commodities and both agree to
> abide by the terms and conditions listed below:
>
> | | |
> |---|---|
> | Quantity: | 2,000 BU. |
> | Commodity: | Soft white wheat |
> | Price: | 4.00 |
> | Price basis: | FOB whse |
> | Title passes on: | 11-22-91 |
> | Payment date: | Jan 1992 |

The contracts do not provide for interest.  Nevertheless, Union
Elevator paid petitioners interest at a rate of 5 percent per
annum.  The following table contains the material terms of the
contracts in question:[1]

| Number | Net Payment | Interest | Total |
|--------|-------------|----------|-------|
| 5554A | $38,618.65 | $449.67 | $39,068.32 |
| 5644A | 854.30 | 7.37 | 861.67 |
| 5654A | 2,210.50 | 18.77 | 2,229.27 |
| 5658A | 6,636.61 | 56.37 | 6,692.98 |
| 5658A | 12,534.33 | 106.46 | 12,640.79 |
| 5682A | 11,790.75 | 92.06 | 11,882.81 |
| 5785A | 7,880.40 | 42.10 | 7,922.50 |
| 5793A | 37,925.87 | 187.03 | 38,112.90 |
| 5793A | 17,869.47 | 88.12 | 17,957.59 |
| 5798A | 19,800.50 | 94.93 | 19,895.43 |
| Total | 156,121.38 | 1,142.88 | 157,264.26 |

The wheat that petitioners sold pursuant to the contracts was
sold at the prevailing market price for wheat as of the date of
each contract.

Union Elevator used grain settlement statements in deter-
mining the amount to be paid to petitioners.  The amount to be
paid consisted of the gross price agreed upon for the wheat, less
any grade discount or premiums, storage charges, and Washington
State Wheat Commission tax.  Also, petitioners pledged the

---

[1]The amount shown for contract 5554A is net of the portion
pledged to secure a loan from Commodity Credit Corporation (CCC).
Respondent argues, and we agree, that, if we find for respondent,
then the full amount of this contract should be included in
income, not reduced for the amount pledged to CCC.

proceeds from contract 5554A to secure a loan from Commodity Credit Corporation (CCC).

On January 2, 1992, Union Elevator paid petitioners $157,264.26, the amount due under the contracts. It was not unusual for petitioners to collect payment on the contracts soon after the first of the year. The balance of the loan from CCC on this date was $32,725.37, consisting of principal and interest. This amount was not paid to petitioners but was withheld and remitted to CCC. Petitioners, in preparing their 1991 Federal income tax return, did not include in income any amount relating to the contracts for regular tax or alternative minimum tax (AMT) purposes.

By statutory notice of deficiency, respondent determined that petitioners' AMTI for 1991 should be increased to take into account the deferred sales proceeds from the contracts. Respondent increased petitioners' AMTI by $156,121 to account for these proceeds.

## OPINION

Section 61[2] provides that gross income means all income from whatever source derived. Sec. 61(a)(3). Absent a statutory exception, section 1001(c) requires a taxpayer to recognize, in

---

[2]All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

the year of sale, gain realized from the sale or exchange of property.  Section 453, however, provides an exception to this rule.  <u>Estate of Silverman v. Commissioner</u>, 98 T.C. 54, 62 (1992).

Specifically, section 453 permits a taxpayer to report income from an "installment sale" under the "installment method."  Sec. 453(a).  Under the "installment method", a proportionate amount of income is recognized in the year when a payment is received.  Sec 453(c).  Respondent concedes that, under the installment method, petitioners properly reported income from the contracts in 1992, the year they received payment.

The dispute between petitioners and respondent, however, centers on the proper application of the AMT.  Section 55(a) imposes an alternative minimum tax in an amount equal to the excess of the "tentative minimum tax" over the "regular tax".  The "tentative minimum tax" is computed based on a taxpayer's "alternative minimum taxable income".

To determine AMTI, taxable income is adjusted as provided by sections 56 and 58.  After adjusting taxable income, as provided in sections 56 and 58, the redetermined amount is increased by the "items of tax preference", as set out in section 57.  The resulting amount constitutes a taxpayer's AMTI.  The AMTI in excess of an exemption amount is multiplied by 24 percent to determine the tentative minimum tax.

In general, all Internal Revenue Code provisions that apply in computing regular taxable income also apply in determining a taxpayer's AMTI. Sec. 1.55-1(a), Income Tax Regs. However, at the time of trial, taxpayers like petitioners who used the installment method in computing their taxable income could not use the installment method in computing their AMTI. Specifically, section 56(a)(6) provided:

> SEC. 56(a). Adjustments Applicable to All Tax-payers.--In determining the amount of the alternative minimum taxable income for any taxable year the following treatment shall apply (in lieu of the treatment applicable for purposes of computing the regular tax):

> \*      \*      \*      \*      \*      \*      \*

> (6) Installment sales of certain property.-- In the case of any disposition after March 1, 1986, of any property described in section 1221(1), income from such disposition shall be determined without regard to the installment method under section 453. \* \* \*

Section 1221(1) describes "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The sale of farm products by a farmer is, according to respondent, a disposition of section 1221(1) property. See Rev. Rul. 80-19, 1980-1 C.B. 185.

Respondent asserts, and petitioners do not dispute, that, in this case, petitioners engaged in the business of farming, and the sales of wheat pursuant to the contracts with Union Elevator were dispositions in the ordinary course of their business.

Thus, respondent reasoned that the sales pursuant to the contracts constitute dispositions of property described in section 1221(1). Therefore, respondent concluded, under section 56(a)(6), for AMT purposes, petitioners must determine income from the grain sales without regard to the installment method. Accordingly, respondent argued that the gain from the contracts must be included in petitioners' income in 1991 for purposes of calculating their AMTI.

However, on August 5, 1997, the President signed the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 788 (the Act). Section 403 of the Act provides:

> SEC. 403. Minimum Tax Not to Apply to Farmers' Installment Sales.
>
> (a) In general.--Subsection (a) of section 56 is amended by striking paragraph (6) (relating to treatment of installment sales) * * *.
>
> (b) Effective dates.--
> (1) In general.--The amendment made by this section shall apply to dispositions in taxable years beginning after December 31, 1987.

This provision removes section 56(a)(6) from the Internal Revenue Code. Further, the amendment is made applicable to dispositions after December 31, 1987. Thus, this provision covers the sales made in 1991 under the contracts, and petitioners are therefore permitted to use the installment method in calculating their AMTI for 1991. Accordingly, we conclude that income from the con-

tracts does not have to be included in petitioners' income in 1991 for purposes of calculating their AMTI.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.