CONSOLIDATED OFFICE BUILDINGS COMPANY, A CORPORATION, ET AL.,* PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59109, 59110, 59111. Filed December 23, 1957.

*Sidney H. Wall, Esq.*, for the petitioners.
*J. Earl Gardner, Esq.*, for the respondent.

### OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in income tax against the petitioners in these consolidated cases for the years and in the amounts, as follows:

---

*Proceedings of the following petitioners are consolidated herewith: Chester Williams Building Company, a corporation, Docket No. 59110; Seventh and Flower Roosevelt Building Company, a corporation, Docket No. 59111.

| Docket No. | Petitioner | Year ended November 30 | Deficiency |
|---|---|---|---|
| 59109 | Consolidated Office Buildings Company, a corporation | 1946 | $23,510.30 |
| | | 1947 | 17,679.98 |
| 59110 | Chester Williams Building Company, a corporation | 1948 | 2,019.03 |
| | | 1949 | 2,019.03 |
| | | 1950 | 1,658.42 |
| | | 1948 | 14,136.75 |
| | | 1949 | 14,136.74 |
| 59111 | Seventh and Flower Roosevelt Building Company, a corporation | 1950 | 30,381.56 |
| | | 1951 | 52,433.12 |
| | | 1952 | 5,151.77 |

The Consolidated Office Buildings Company, petitioner in Docket No. 59109, is the parent corporation of the Chester Williams Building Company, petitioner in Docket No. 59110, and the Seventh and Flower Roosevelt Building Company, petitioner in Docket No. 59111. Consolidated income tax returns were filed for the fiscal years ended November 30, 1946 and 1947, and separate returns were filed for the remaining years involved, said returns having been filed with the then collector of internal revenue for the sixth district of California. The cases were consolidated for trial, but the issues with respect to petitioner Consolidated Office Buildings Company were settled; but said petitioner is still involved because of the filing of the consolidated returns for 1946 and 1947.

The sole question to be decided is whether or not petitioners Chester Williams Building Company and Seventh and Flower Roosevelt Building Company may, in order to compute depreciation, use their insolvent predecessor's basis. Certain other adjustments and contingent amounts have been stipulated and they can all be reflected in a Rule 50 computation.

All of the facts were stipulated and are found accordingly.

The Sun Realty Company, a corporation, owned a fee interest in the Consolidated Office Building and leasehold interests in the Chester Williams Building and the Seventh and Flower Roosevelt Building. On or about May 1, 1928, the Sun Realty Company issued a series of bonds known as Sun Office Buildings, 5½% First Mortgage Fee and Leasehold Gold Bonds, which, by a trust indenture and a deed of trust dated May 1, 1928, were secured by Sun Realty Company's interest in the aforementioned three properties.

Sun Realty Company subsequently encountered financial difficulties and in April 1932, in a proceeding filed in the United States District Court for the Southern District of California, a receiver was appointed for all of its properties. The trustee under the trust indenture and deed of trust securing the bonds intervened in this proceeding and obtained an order of the court recognizing the Sun Realty Company's obligation to the bondholders and directing the receiver to sequester for the benefit of the trustee all rents and profits

494

received from the three buildings. The receiver operated the buildings from August 22, 1932, until November 30, 1934, under the direction of the said United States District Court. Pursuant to further supplemental orders of the court the receiver for Sun Realty Company ultimately paid to the trustee for said bondholders a total of $340,232.89 as the amount collected under said sequestration order.

During the period of receivership and prior to November 30, 1934, the Sun Office Buildings Bondholders Committee was formed for the protection of the holders of the above-mentioned bonds. By November 30, 1934, the holders of approximately 94.95 per cent of such bonds in the principal amount of $4,771,000 had deposited their bonds with this committee under a deposit agreement dated April 15, 1932, in return for certificates of deposit.

The deposit agreement, among other things, empowered the committee to formulate and adopt a plan of reorganization. Pursuant to this authorization the committee adopted a plan of reorganization, which was subsequently approved by the District Court. The terms of the plan specified in detail each step to be taken to carry out the plan. By way of introduction, it recited:

Default has been made with respect to the payment of principal and interest, and a reorganization and refinancing is necessary. Accordingly, the undersigned committee has requested the trustee under the first mortgage bond issue to serve a notice of acceleration declaring all of said bonds due and payable, and will request such trustee to sell the properties securing the present bonds pursuant to the terms of the trust deed and chattel mortgage above mentioned. It is unlikely that an adequate bid will be made at the sale by any outside interests, and it probably will be necessary that the first mortgage bondholders purchase the properties at the trustee's sale in order to protect themselves. The committee is prepared to bid at the trustee's sale, and has adopted the following plan for the reorganization of the property:

The first provision in the reorganization plan provided:

In the event the committee or its nominee or representative shall acquire title to said properties at such trustee's sale or in any other manner for the benefit of the depositing bondholders, such title to each of said three properties so acquired shall be conveyed and transferred to a new corporation to be organized under the laws of the State of California, or such other state as the committee may select, or at its option such title may be acquired by such new corporations, respectively, or by any one or more of them, directly at such trustee's sale. Each of such new corporations shall have such name, such powers and such authorized capitalization, represented by such number of shares of capital stock with such par value or without par value as may be designated by the committee. The new corporation which shall acquire the leaseholds covering the Roosevelt Building is hereafter called the "Roosevelt Building corporation"; the new corporation which shall acquire the leasehold covering the Chester Williams Building is hereafter called the "Chester Williams Building corporation"; and the new corporation which shall acquire the Consolidated Building property is hereafter called the "Sun Office Buildings corporation," or the "new corporation." * * * All of the issued stock of the Roose-

velt Building corporation and of the Chester Williams Building corporation shall be issued to [Consolidated], and the Roosevelt Building corporation and the Chester Williams Building corporation, respectively, shall also issue to [Consolidated] their secured notes as hereinafter provided * * *

The name of the parent corporation, Sun Office Buildings, corporation, appearing in the above quotation, was never used. The new corporation, when formed, was called Consolidated Office Buildings Company. We will hereafter refer to the three corporations as Consolidated, Roosevelt, and Williams.

The reorganization plan further provided that all of Consolidated's stock should be issued to the depositing Sun Realty Company bondholders in proportion to their interests as represented by the amount of Sun Realty Company bonds deposited by them with the committee (subject to a voting trust agreement); and further, that Consolidated should issue new bonds to the depositing Sun Realty Company bondholders equal to the principal amount of the bonds deposited with the committee and secured by all property to be acquired by Consolidated, consisting of the Consolidated Building and all the stock and secured notes of Williams and Roosevelt.

Pursuant to and in accordance with the reorganization plan, the bondholders committee caused the following things to be done:

(a) Consolidated was formed on or about October 8, 1934. Williams and Roosevelt were formed on or about October 11, 1934, and were made wholly owned subsidiaries of Consolidated. On October 16, 1934, Consolidated entered into a contract with the Sun Office Buildings bondholders which, among other things, required Consolidated to abide by and perform the terms of said reorganization plan.

(b) The trustee petitioned the court for authority to accelerate the bonds and to sell the trust property. An order of court so providing was entered on or about August 4, 1934. Pursuant to this order a trustee's sale was held on November 30, 1934. Consolidated acted at the trustee's sale as the nominee of the committee and bid in and acquired title to the Consolidated Office Building and the leasehold interests in the Chester Williams Building and the Seventh and Flower Roosevelt Building.

(c) Consolidated in turn, by assignments dated November 30, 1934, transferred (1) the Chester Williams Building leasehold to Williams in exchange for all of Williams's stock and its promissory note in the amount of $1,000,000 and (2) the Seventh and Flower Roosevelt Building leasehold to Roosevelt in exchange for all of Roosevelt's stock and its promissory note in the amount of $2,000,000.

(d) The cash collected by H. F. Metcalf, as receiver for Sun Realty Company, was transferred to Union Bank & Trust Company, as trustee, which in addition held cash in a sinking fund in the amount of

$2,635.59. From these sums, totaling $342,868.48, Union Bank & Trust Company used $44,294.25 in payment of its expenses as trustee, disbursed $78,278.98 to nondepositing bondholders as their share, and accounted to Consolidated for the balance, $220,295.25. This amount, $220,295.25, constituted the initial capital contribution and was allocated among Consolidated, Williams, and Roosevelt by the bondholders committee through the records of Consolidated. Of this contribution, $163,902.93 was expended in payment of expenses incurred in connection with the plan of reorganization, and the remainder, $56,392.32, was distributed as working capital to Consolidated, which in turn distributed part thereof to Williams and Roosevelt in amounts specified by said bondholders committee.

(e) The Sun Realty Company bondholders, in exchange for their Sun Realty Company bonds, received all of the issued and outstanding capital stock of Consolidated and, in addition, new bonds issued by Consolidated in a principal amount of $4,771,000, bearing a 20-year maturity date. The new Consolidated bonds were secured by the fee property owned by Consolidated and by the notes and capital stock of Williams and Roosevelt which were owned by Consolidated.

Consolidated, Williams, and Roosevelt were new corporations organized to effectuate the court-approved plan of reorganization. After completion of the reorganization, the former bondholders of Sun Realty Company who participated in the plan of reorganization owned all the issued and outstanding capital stock and bonds of Consolidated and no other person had any interest in Consolidated or its wholly owned subsidiaries, Roosevelt and Williams. At all times here in question the only assets held by Consolidated, Williams, or Roosevelt were the aforementioned properties and their rents and profits, and Consolidated has owned all of the issued and outstanding stock and promissory notes of Williams and Roosevelt.

Petitioners, on each of the tax returns here in question, claimed as a basis for the properties which they received the cost of such interests to their predecessor, Sun Realty Company, and deducted a proportion of such cost as depreciation and amortization based on an expected life of 43½ years. Respondent now agrees that Consolidated is entitled to use its predecessor's basis for the Consolidated Office Building but has declined to allow Williams or Roosevelt to use a similar basis for their respective leasehold interests. The deficiencies here involved are based upon respondent's refusal to allow Williams and Roosevelt to use their predecessor's basis.

Section 113 (a) (22) provides that a predecessor's basis may be carried over if a transfer of corporate assets complies with the provisions of section 112 (b) (10). The latter section provides, in part:

No gain or loss shall be recognized if property of a corporation * * * is transferred, in a taxable year of such corporation beginning after December 31,

1933, in pursuance of an order of the court having jurisdiction of such corporation—

    (A) in a receivership, foreclosure, or similar proceeding, * * *

  *     *     *     *     *     *     *

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation.

Petitioners argue the transfers here meet the literal requirements of the above statute. Petitioners point out that here the property of a corporation, the Sun Realty Company, was transferred in a taxable year, 1934, pursuant to an order of the Federal District Court having jurisdiction of Sun Realty Company in a receivership proceeding. Each transfer was to another corporation (Consolidated or Williams or Roosevelt) organized to effectuate a plan of reorganization which had been approved by the court in the receivership proceedings. Each property was transferred solely in exchange for stock and securities of the transferee corporation.

Petitioners' statement of the above facts, which are all correct, seems to spell out the literal requirements of the statute but petitioners admit there is another requirement of continuity of interest that must be met. Whether that requirement is met or not is the crucial question in the case.

"Continuity of interest" is the doctrine that imposes a requirement that the transferors (here the bondholders) must have acquired in the reorganization an interest in the affairs of the transferee that is definite and material and represents a substantial part of the value of the thing transferred. *Cortland Specialty Co.* v. *Commissioner*, 60 F. 2d 937; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Le Tulle* v. *Scofield*, 308 U. S. 415. The bondholders stand in the position of the former shareholders of Sun Realty Company whose interest was extinguished. *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179.

While section 112 (b) (10) was passed as a relief measure designed to give tax-free status to bankruptcy and receivership reorganizations, which might not qualify under the then existing more stringent reorganization sections [1], nevertheless the continuity of interest con-

---

[1] In its report on this section, the Senate Finance Committee stated:

Your committee has granted relief in the case of reorganizations of certain insolvent corporations where property is transferred to another corporation pursuant to receivership, foreclosure, or bankruptcy proceedings, or where there has been a reorganization * * *. In general, no gain or loss is recognized where such a transfer of property has been made, and the new corporation is entitled to the same basis which such assets had in the hands of the transferor. * * *

  *     *     *     *     *     *     *

It is intended that only an actual reorganization of a corporation will be covered as distinguished from a liquidation in a bankruptcy proceeding and sale of property to either new or old interests supplying new capital and discharging the obligations of the old corporation * * *. [S. Rept. No. 627, 78th Cong., 1st Sess.]

cept is to be applied to section 112 (b) (10) reorganizations. *Chicago Stadium Corporation*, 13 T. C. 889.

Respondent concedes that the transfer of the Consolidated Building to petitioner Consolidated was tax free, and to this extent the reorganization complied with the provisions of section 112 (b) (10) and with the requirement of continuity of interest. Respondent contends that there is no continuity of interest between the former Sun Realty Company bondholders and Williams and Roosevelt buildings because the former bondholders of Sun Realty Company received no stock or securities from the corporations acquiring the leasehold interests in those buildings.

Respondent's position is, in essence, that the interposition of the wholly owned parent, Consolidated, between the former bondholders and the wholly owned subsidiaries, Williams and Roosevelt, breaks the continuity of the bondholders' interest in the properties held by the subsidiaries.

The argument of the respondent is founded upon the premise that, for continuity of interest to be established, the prior owners must emerge from the reorganization, physically holding the stock of the corporation that acquired the property. Upon this premise, which is not based on any language in the statute, respondent contends the transfers to Williams and Roosevelt were not tax free because their stock went to Consolidated and not to the bondholders. But the bondholders owned Consolidated. It was specifically created by the bondholders, under the reorganization plan, for the dual purpose of receiving the stock of Roosevelt and Williams, and operating the Consolidated Building. Every reorganization contemplates the carrying forward of the business in some new or modified corporate form. We do not understand that the continuity of interest doctrine prescribes any particular method as being necessary to satisfy this requirement.

It is the effect of the reorganization that is important. · The test is whether the existing ownership interests persist as such in what is a continuing enterprise, in some different corporate form. We do not see that it makes any difference on the continuity of interest question, whether the business is carried forward by the bondholders by a direct stock ownership by the bondholders, or stock ownership in a parent and wholly owned subsidiaries. In either case, the bondholders' interest is carried forward as the continuing business in different corporate form.

Respondent cites *Groman* v. *Commissioner*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454; *Avco Manufacturing Corporation*, 25 T. C. 975; and *Jessie Pritchard*, 40 B. T. A. 1289. The cited cases are not authority for the proposition that petitioners here did not comply

with the continuity of interest requirement. It is true they are parent and subsidiary cases where it was held continuity of interest was lacking because the parent was not a party to the reorganization but existed prior thereto and the transferors either shared their interest with outsiders or acquired a substantial interest in new assets. The facts in the cited cases show something more than the mere change in corporate structure, which is all that took place in the instant case.

The bondholders retained their complete investment in the three buildings. They continued their absolute control over the three buildings. They obtained no interest in any new assets. There were no third parties obtaining any interest in the three buildings. The design of the statute is to extend tax-free relief to bankruptcy reorganizations where the old enterprise and the interests of the owners can be seen to continue into the corporate form that emerges from the court-approved reorganization. We hold continuity of interest is not automatically broken by the parent-subsidiary plan herein followed. Cf. *Barker* v. *United States*, 200 F. 2d 223. We hold petitioners are entitled to use their predecessor's bases in reporting deductions for depreciation.

*Decisions will be entered under Rule 50.*